UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARCH INSURANCE CO., a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire corporation, *et al.*,<br><br>Defendants. | CASE NO. C18-1591-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Mutual of Enumclaw Insurance Co.'s ("MOE") motion for partial summary judgment (Dkt. No. 21), Defendant Country Mutual Insurance Company's ("Country") joinder and motion for partial summary judgment (Dkt. No. 24), and Defendant Safeco Insurance Company of America's ("Safeco") motion for partial summary judgment (Dkt. No. 28). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motions for the reasons explained herein.

I.  **BACKGROUND**

   **A. Plaintiff's Policies**

Lummi Island Scenic Estates Community Club ("LISECC") is a residential community

with approximately 400 dues-paying lots, which share a water supply system and community marina. (Dkt. No. 35 at 2–3.) LISECC's bylaws provide that members of its board of directors (the "LISECC board") "shall not be individually liable except for a Director's own bad faith, dishonesty, or fraud." (Dkt. No. 23 at 13.)

Plaintiff Arch Insurance Company issued four successive Water District Insurance Program Policies (collectively, "Plaintiff's policies") to LISECC. (Dkt. No. 35 at 2; *see* Dkt. Nos. 37-1–37-4.) Plaintiff's policies were in effect from May 16, 2011 to May 16, 2015. (*See* Dkt. Nos. 37 at 2, 37-1–37-4.) Plaintiff's policies' definition of "insured" included LISECC as the named insured and "All persons who were, now are or shall be elected, appointed or employed as members of your board, commission or agency while acting within the scope of their duties." (*See* Dkt. Nos. 37-1 at 13, 37-2 at 14.)

Plaintiff's policies obligated Plaintiff to "pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury', 'advertising injury', 'professional liability', 'wrongful acts' or 'acts, errors or omissions' to which" Plaintiff's policies applied. (*See* Dkt. Nos. 37-1 at 10, 37-2 at 11.)[1] "Wrongful Act" was broadly defined, and included any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by any Insured in the discharge of his/her duties for [LISECC]." (Dkt. Nos. 37-1 at 20, 37-2 at 21.) The definition excluded "willful commission of a crime or other dishonest, fraudulent, or malicious act[s]," wrongful financial gain, or erroneous preparation or approval of "maps, plans, reports, surveys, designs, bid documents, or specifications . . . ." (*Id.*) LISECC paid $8,967.00 in premiums for Plaintiff's policy covering May 16, 2014 to May 16, 2015. (*See* Dkt. No. 23 at 95.)

---

[1] Plaintiff's policies defined "bodily injury" as "bodily injury, sickness or disease sustained by a person" along with resultant death or mental anguish, and included "any resulting care and loss of services by any person or persons. (Dkt. Nos. 37-1 at 17, 37-2 at 18.) "Property damage" was defined as "[p]hysical injury to or destruction of tangible property" along with any resultant loss of the damaged property or other tangible property. (Dkt. Nos. 37-1 at 19, 37-2 at 20.)

### B. MOE's Policy

MOE issued personal lines homeowners policies to J. Timothy Slater and Kiersten Slater (collectively, the "Slaters") from 2002 to 2013. (Dkt. No. 21 at 6.) The policy covering the period of April 25, 2012 to April 25, 2013 (the "MOE policy") applied to the Slaters and certain residents of their household. (Dkt. No. 22 at 9.) The MOE policy's personal liability section covered "bodily injury" and "property damage" caused by a qualifying "occurrence," and obligated MOE to defend and indemnify the Slaters (*Id*. at 23.)[2] The Slaters' total premium for the MOE policy was $856.62. (Dkt. No. 22 at 5.)

### C. Country's Policies

Beginning on March 15, 2013, Country issued successive 12-month homeowners insurance (the "Country homeowner policy") and personal umbrella liability insurance (the "Country umbrella policy") policies (collectively, the "Country policies") to the Slaters. (Dkt. Nos. 25 at 1–2, 25-1, 25-2.) The Country homeowner policy covered "bodily injury" or "property damage" resulting from a qualifying "occurrence," and obligated Country to defend and indemnify the Slaters. (Dkt. No. 25-1 at 19.)[3] The Country umbrella policy granted Country the right to join an insured and an underlying insurer in defending a claim or suit that could involve Country, and obligated Country to "assume control of the defense or settlement . . .

---

[2] The MOE policy defined "bodily injury" as "bodily harm, sickness or disease . . . 'Bodily injury' includes required care, loss of services, and death resulting from covered bodily harm, sickness or disease." (Dkt. No. 22 at 9.) The MOE policy further defined "bodily injury" to include "personal injury," which was in turn defined as "injury arising out of . . . a. false arrest, detention or imprisonment, or malicious prosecution; b. libel, slander or defamation of character; or c. invasion of rights of private occupancy, wrongful eviction or wrongful entry." (*Id*. at 10, 26.)

[3] The Country homeowner policy defined "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . 'Bodily injury'; or . . . 'Property damage'." (Dkt. No. 25-1 at 17–18.) "Bodily injury" was defined as "physical injury to a person. Sickness, disease, or emotional distress that is not caused by physical injury is not 'bodily injury'." (*Id*. at 16.) "Property damage" was defined as "physical injury to or destruction of tangible property, including the resulting loss of use of this property." (*Id*. at 18.)

[w]hen underlying insurance is exhausted for an occurrence; and . . . [n]o other excess insurance applies to the claim or suit." (Dkt. No. 25-2 at 11–12) (alteration omitted).[4] The Slaters' total premium for the Country homeowner policy commencing in March 2015 was $591.14, and their total premium for the Country umbrella policy commencing in March 2015 was $505. (Dkt. Nos. 25-1 at 2, 25-2 at 2.)

### D. Safeco Policy

Beginning on October 1, 2012, Safeco issued annual individual homeowners policies to Bridged Lott. (Dkt. No. 29-3 at 2.) Under the policy issued by Safeco commencing on October 1, 2014 (the "Safeco policy"), the personal liability section obligated Safeco to defend or indemnify Ms. Lott for "bodily injury" or "property damage" arising out of a qualifying occurrence. (Dkt. No. 29-5 at 26) (alterations omitted).[5] The Safeco policy applied to Ms. Lott and qualifying residents of the residence premises. (*Id*. at 36.) Ms. Lott's total premium for the Safeco policy was $1,536. (*Id*. at 8.)

### E. The Underlying Litigation

In December 2014, a group of LISECC homeowners sued LISECC and various past and present members of the LISECC board, including Ms. Lott and Mr. Slater (the "underlying litigation"). *See Ortego v. LISECC*, Case No. C14-1840-RSL, Dkt. Nos. 1, 13 (W.D. Wash.

---

[4] The Country umbrella policy defined "occurrence" as an "accident . . . that result[s] in bodily injury or property damages. Occurrence also means an act that results in . . . personal injury." (Dkt. No. 25-2 at 10) (alteration omitted). "Bodily injury" was defined as "physical harm to a person, including sickness or disease, and any required care, loss of services, or death resulting from the physical harm." (*Id*.) "Property damage" was defined as "harm to or destruction of tangible property, including loss of use." (*Id*. at 11.) "Personal injury" was defined as "False arrest, false imprisonment, wrongful eviction, wrongful detention, or malicious prosecution; and . . . Libel, slander, defamation of character or invasion of rights of privacy." (*Id*. at 10.)

[5] The Safeco policy defined "occurrence" as "an accident . . . which results in (1) bodily injury; or (2) property damage . . . ." (Dkt. No. 29-5 at 26) (alterations omitted). "Bodily injury" was defined as "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom." (*Id*. at 35.) "Property damage" was defined as "physical damage to or destruction of tangible property, including loss of use of this property." (*Id*. at 37.)

2014). The complaint primarily alleged that LISECC and the LISECC board improperly collected dues and misused collected dues to subsidize LISECC's water supply, which only benefitted a minority of LISECC's lot owners. *See generally Ortego*, Case No. C14-1840-RSL, Dkt. No. 13. The complaint brought claims under the federal Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.*; the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86 *et seq.*; and state law claims of breach of fiduciary duties, negligence, intentional infliction of emotional distress, and unjust enrichment. *See id*. at 51–66. The complaint sought dissolution of LISECC and various forms of damages. *Id*. at 66.[6]

In February 2015, Plaintiff agreed to defend LISECC and the directors named as defendants in the underlying litigation pursuant to Plaintiff's policies. (*See* Dkt. No. 38-1 at 2.) Plaintiff reserved its right to limit or deny coverage for the underlying litigation. (*Id*.) Ms. Lott and Mr. Slater were named as individual defendants. *See Ortego*, Case No. C14-1840-RSL, Dkt. No. 1 at 1. Plaintiff ultimately retained the Summit Law Group to represent LISECC and the defendant members of the LISECC board. (*See* Dkt. No. 38 at 2.)

In April 2015, Ms. Lott tendered the defense of the underlying litigation to Safeco. (*See* Dkt. No. 29-3 at 2.) Safeco sent Ms. Lott a reservation of rights letter stating that Safeco would only cover damages within the scope of the personal liability section of the Safeco policy. (*See id*. at 5–6.) In August 2015, Safeco accepted the duty to defend Ms. Lott, subject to the reservation of rights. (Dkt. No. 29-4 at 2–8.) Safeco contacted LISECC and the Summit Law Group "to obtain the status of the case and determine what percentage of [counsel's] bill Safeco would owe for Ms. Lott." (Dkt. No. 32 at 2.)

---

[6] Plaintiff notes that another lawsuit was filed against LISECC and multiple present and past members of the LISECC board, including Ms. Lott and Mr. Slater, in Whatcom County Superior Court. (*See* Dkt. No. 38 at 2–3.) Plaintiff agreed to defend LISECC and the named directors in the state court litigation. (*Id*. at 2.) The plaintiffs' claims in that litigation were dismissed in 2019. (*Id*. at 4.) Plaintiff includes its costs incurred in the state court litigation in its claimed total costs in defending LISECC and the directors. (*Id*.) Defendants' motions for partial summary judgment do not discuss the state court litigation. (*See* Dkt. Nos. 21, 24, 28.)

In July 2015, counsel for the Slaters, who was previously retained by MOE pursuant to a separate homeowners policy, tendered the defense of the underlying litigation to MOE. (Dkt. Nos. 21 at 7, 22 at 33–35.) MOE and Country agreed to share the cost of defending Mr. Slater, and notified the Slaters that their coverage under the MOE policy and Country policies was limited to those claims that could involve bodily injury, personal injury, or property damage caused by an occurrence, as defined in the MOE policy and Country policies. (*See* Dkt. Nos. 21 at 7–8; 22 at 37–48, 59–60; 25-4 at 2–13.)

In October 2017, Plaintiff sent a letter to MOE, Country, and Safeco proposing to split the defense costs from the underlying litigation equally between the four entities. (*See* Dkt. No. 22 at 50–51.) Plaintiff explained that sharing the defense costs equally was justified "given that the suits allege that each board member acted in concert and are jointly and severally liable for each other's conduct . . . ." (*Id*. at 51.) Plaintiff asserted that "the insurers are required to defend the entirety of the allegations in the suits even if they did not insure every board member." (*Id*.)

MOE and Country objected to Plaintiff's request, arguing that their duty to defend was limited to the Slaters as the insureds under the MOE policy and Country policies. (Dkt. No. 22 at 59–60.) MOE and Country stated that their burden of the defense costs was appropriately limited to one-ninth, as Mr. Slater was one of nine named defendants in the underlying litigation. (*Id*.) The record does not indicate that Safeco responded to the letter.

In June 2018, the underlying litigation concluded when the Ninth Circuit Court of Appeals affirmed the district court's dismissal of the plaintiffs' claims. (*See* Dkt. No. 23-4.) Plaintiff incurred $843,388.29 in defense costs while defending LISECC and the directors in the underlying litigation. (Dkt. No. 38 at 4.) MOE incurred over $100,000 in defense costs while defending Mr. Slater. (Dkt. Nos. 21 at 8, 22 at 62.) Country incurred approximately $160,000 in defense costs while defending Mr. Slater. (Dkt. Nos. 24 at 6, 25 at 2, 25-7.) Safeco did not participate in the underlying litigation, and thus did not incur defense costs. (*See* Dkt. No. 28 at 12–13.)

### F. The Present Litigation

In October 2018, Plaintiff filed the instant lawsuit, asserting claims for contribution and equitable subrogation against MOE, Country, and Safeco, as well as seeking declaratory judgments regarding Plaintiff's duty to defend and indemnify. (*See generally* Dkt. No. 1.) MOE, Country, and Safeco have each filed a motion for partial summary judgment on Plaintiff's claims for contribution and equitable subrogation. (*See* Dkt. Nos. 21, 24, 28.)

## II. DISCUSSION

### A. Summary Judgment Legal Standard

Summary judgment is appropriate when the moving party demonstrates that no genuine dispute of material fact exists and that the Court can enter a judgment in favor of the moving party as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the initial burden to demonstrate that no genuine dispute of material fact exists. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden of production, then the burden shifts to the nonmoving party to adduce evidence that could reasonably lead a factfinder to find in favor of the nonmoving party, creating a genuine dispute of material fact. *Id*. at 1187.

### B. Equitable Contribution

"Equitable contribution refers to the right of one party to recover from another party for a common liability." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 872 (Wash. 2008). "In the context of insurance law, contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss." *Id*. "For two policies to cover the same loss, the 'polic[ies] must insure [1] the same property and [2] the same interest [3] against the same risk . . . .'" *Ohio Sec. Ins. Co. v. Axis Ins. Co.*, Case No. C15-5698-BHS, Dkt. No. 35 at 5 (W.D. Wash. 2017) (alterations in original) (quoting *Kirkland v. Ohio*

*Cas. Ins. Co.*, 569 P.2d 1218, 1223 (Wash. Ct. App. 1977)). "Importantly, contribution is a right of the insurer and is independent of the rights of the insured." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 872.

To determine whether an insurer is entitled to equitable contribution from another, the Court looks to whether an insurer "had a *legal obligation* … to provide [a] defense [or] indemnify coverage for the … claim or action *prior to [the date of settlement]*." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 872 (alterations in original) (quoting *Safeco Ins. Co. of Am. v. Superior Court*, 44 Cal. Rptr. 3d 841, 845 (Cal. Ct. App. 2006)). An insurer does not have a duty to defend until a complaint is filed against its insured which, liberally construed, alleges facts which could impose liability subject to coverage under the policy. *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999). But "[t]he duties to defend and indemnify do not become *legal obligations* until a claim for defense or indemnity is tendered." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873 (footnotes omitted). And "[e]quity provides no right for an insurer to seek contribution from another insurer who has no obligation to the insured." *Id.* (collecting cases).

The parties agree that among the defendants in the underlying litigation, the MOE policy and Country policies applied to Mr. Slater alone and the Safeco policy applied to Ms. Lott alone. (*See* Dkt. Nos. 21 at 10; 28 at 10; 35 at 5, 10.) Thus, there is no genuine dispute that LISECC and the other members of the LISECC board named as defendants in the underlying litigation were not insureds of MOE, Country, or Safeco, and thus were not owed any duty or obligation by MOE, Country, and Safeco. *See Mut. of Enumclaw Ins. Co*, 191 P.3d at 872.[7] Therefore, MOE's

---

[7] The Court further notes that an insurer does not have an obligation to defend or indemnify until an insured tenders the defense or indemnity to it, *see Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873, and Plaintiff has not cited evidence establishing that LISECC or the other members of the LISECC board tendered any defense or indemnity to MOE, Country, or Safeco. (*See* Dkt. No. 35 at 10–18.) Thus, Plaintiff has not established that MOE, Country, or Safeco had a legal obligation to the other defendants in the underlying litigation sufficient to support a claim of equitable contribution. *See Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873.

motion for partial summary judgment, Country's joinder and motion for partial summary judgment, and Safeco's motion for partial summary judgment are GRANTED as to Plaintiff's claims for equitable contribution for costs attributable to defending defendants in the underlying litigation who were not insureds of MOE, Country, or Safeco.[8]

MOE and Country further contend that Plaintiff is not entitled to equitable contribution from them because they have discharged their defense obligation to Mr. Slater, as evidenced by their expenditure of substantial sums in the underlying litigation. (*See* Dkt. No. 21 at 10–11) (citing *Aetna Cas. & Sur. Co. v. Mut. of Enumclaw Ins. Co.*, 826 P.2d 1315, 1319 (Idaho 1992) (applying Idaho law to hold that two insurers who fulfilled their duty to defend the same insured were to bear their own defense costs despite disparity in total expenditures)); (*see also* Dkt. Nos. 21 at 8, 22 at 62, 24 at 6, 25 at 2, 25-7). MOE and Country have not offered Washington or federal case law standing for the proposition that an insurer's expenditure of any amount of funds in defense of a shared insured precludes a claim by another insurer for equitable contribution. (*See* Dkt. No. 21 at 9–11.) Taking all reasonable inferences in favor of Plaintiff, there is a genuine dispute as to whether Plaintiff is entitled to equitable contribution from MOE and Country for its defense costs incurred in defending Mr. Slater in the underlying litigation, even if MOE and Country discharged their duty to defend Mr. Slater. *See Celotex Corp.*, 477

---

[8] Plaintiff asserts that MOE, Country, and Safeco are obligated to share in Plaintiff's total costs because they were concurrent insurers of Ms. Lott and Mr. Slater and there was a common set of facts giving rise to the claims in the underlying litigation. (Dkt. No. 35 at 14–18) (citing *Perez Trucking, Inc. v. Ryder Truck Rental, Inc.*, 886 P.2d 196, 201 (Wash. Ct. App. 1994) (holding that concurrent insurers of same insured are jointly and severally liable for defense costs); *Waite v. Aetna Cas. & Sur. Co.*, 467 P.2d 847, 851–52 (Wash. 1970) (discussing allocation of defense costs between insurers when litigation involves both covered and non-covered claims)). Plaintiff's offered cases do not stand for the proposition that an insurer with a single insured as a named defendant in multi-defendant litigation becomes responsible for costs attributable to other defendants. (*See* Dkt. No. 35 at 14–18.) The fact that MOE, Country, and Safeco may be considered concurrent insurers of Ms. Lott and the Slaters goes to their potential obligation to contribute to Plaintiff's costs in defending those insureds, not their co-defendants in the underlying litigation. *See Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873; *Perez Trucking*, 886 P.2d at 201.

U.S. at 322–23. MOE and Country's expenditures in defending Mr. Slater are more appropriately considered in determining the amount, if any, that equitable principles mandate they contribute to Plaintiff's incurred costs. Therefore, MOE's motion for partial summary judgment and Country's joinder and motion for summary judgment are DENIED on this ground.

MOE and Country also argue that the MOE policy and Country policies insured different losses or risks than Plaintiff's policies, and therefore Plaintiff cannot seek equitable contribution from them for its incurred costs. (*See* Dkt. No. 21 at 9–10.) All three policies cover "bodily injury" and "property damage" under similar definitions. (*See* Dkt. Nos. 22 at 23, 25-1 at 19, 37-1 at 10, 37-2 at 11). Plaintiff's policies also provide coverage for "wrongful acts," which is not a defined term under the MOE policy or Country policies. (*See* Dkt. No. 21 at 10; *see also* Dkt. Nos. 37-1 at 20, 37-2 at 21.) Thus, for the policies to cover a different risk or loss with regard to the underlying litigation, the claims therein must fall within the "wrongful acts" category of Plaintiff's policies alone. *See Ohio Sec. Ins. Co.*, Case No. C15-5698-BHS, Dkt. No. 35 at 5. MOE and Country rely on Plaintiff's policies' coverage of "wrongful acts," the inclusion of insureds other than the Slaters under Plaintiff's policies, and the lower premiums of the MOE policy and Country policies to assert that the two sets of policies insure different losses or risks. (*See* Dkt. No. 21 at 9–10.) Taking all reasonable inferences in favor of Plaintiff, MOE and Country have not established that the claims in the underlying litigation fall within the wrongful acts category of Plaintiff's policies as a matter of law, and therefore a genuine dispute exists as to whether the MOE policy, Country policies, and Plaintiff's policies insured the same loss as to the claims in the underlying litigation. *See Celotex Corp.*, 477 U.S. at 322–23; *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 872.[9] Therefore, MOE's motion for partial summary judgment and

---

[9] MOE and Country have counterclaimed for equitable contribution and indemnity from Plaintiff for their defense costs in the underlying litigation, arguing that Plaintiff was the primary insurer of Mr. Slater for claims arising out of his performance of his duties for LISECC and the LISECC board. (*See* Dkt. Nos. 10 at 9–10, 11 at 11–12.) MOE and Country's counterclaims and supporting arguments are not at issue in their present motions for partial summary judgment. (*See generally* Dkt. Nos. 21, 24.)

Country's joinder and motion for summary judgment are DENIED on this ground.

In sum, MOE's motion for partial summary judgment, Country's joinder and motion for partial summary judgment, and Safeco's motion for partial summary judgment are GRANTED on Plaintiff's claims for equitable contribution for costs incurred defending LISECC or other members of the LISECC board in the underlying litigation who are not insureds of MOE, Country, or Safeco. The motions are otherwise DENIED as to Plaintiff's equitable contribution claims.

### C. Equitable Subrogation

"Subrogation is the equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it." *Mahler v. Szucs*, 957 P.2d 632, 640 (Wash. 1998). Thus, subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874. Conventional subrogation arises by contract, whereas equitable subrogation arises by operation of law. *Id.*

"Equitable subrogation is a legal fiction whereby a person who pays a debt for which another is primarily responsible is subrogated to the rights and remedies of the other." *Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co.*, 887 P.2d 455, 458 (Wash. Ct. App. 1995). "An insurer entitled to subrogation 'stands in the shoes' of the insured and is entitled to the same rights and subject to the same defenses as the insured." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874 (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 302 (Cal. Ct. App. 1998)); *see also Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 728 (Wash. 1992). To establish a claim for equitable subrogation, a party must first establish a right to reimbursement. *Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co.*, 312 P.3d 976, 984 (Wash. Ct. App. 2013) (citing *Mahler*, 957 P.2d at 640). "By virtue of payments

made to or on behalf of an insured, and insurer has a right to reimbursement under general subrogation principles." *Id.* "[T]he insurer, standing in the shoes of its insured, may pursue an action in the insured's name against the third party to enforce the reimbursement right." *Id.* "Subrogation is always liberally allowed in the interests of justice and equity." *Mahler*, 957 P.2d at 640 (quoting *J.D. O'Malley & Co. v. Lewis*, 28 P.2d 283, 286 (Wash. 1934)).

To assert a claim against MOE and Country for equitable subrogation, Plaintiff must establish that their shared insured, the Slaters, would have a right to reimbursement as to MOE and Country. *See Trinity Universal Ins. Co.*, 312 P.3d at 984. Plaintiff has not established such a right. MOE and Country's duty to defend Mr. Slater became a legal obligation to defend him when the Slaters tendered the defense of the underlying litigation to MOE and Country. (Dkt. Nos. 21 at 7; 22 at 33–48, 59–60; 25-4 at 2–13); *see Unigard Ins. Co.*, 983 P.2d at 1160; *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873. MOE and Country have offered evidence demonstrating that they undertook the defense of Mr. Slater and discharged their duty: they participated in the underlying litigation through its conclusion, Mr. Slater prevailed in the underlying litigation, and MOE and Country incurred significant legal costs in discharging their duty. (*See* Dkt. Nos. 21 at 8, 22 at 62, 24 at 6, 25 at 2, 25-7.) In response, Plaintiff broadly asserts that questions of fact exist as to whether MOE and Country breached their duty to defend because they did not "meaningfully contribute" to defending Mr. Slater, citing the disparity between Plaintiff's, MOE's, and Country's legal costs, and relying on case law analyzing an excess insurer's right to reimbursement against a primary insurer who breaches its duty to defend. (Dkt. No. 35 at 17–21) (citing *Nat'l Union Ins. Co. v. Greenwich Ins. Co.*, Case No. C07-2065-JCC, Dkt. No. 78 (W.D. Wash. 2007); *Truck Ins. Exch. of Farmers Ins. Grp.*, 887 P.2d at 458).[10] But Plaintiff has not

---

[10] In its reply brief, Safeco challenges Plaintiff's characterization of itself as an excess insurer and Safeco as Ms. Lott's primary insurer. (*See* Dkt. No. 40 at 12–16.) Safeco argues that LISECC must have intended that Plaintiff's policies would be the primary insurance under the facts of this case. (*Id.* at 12.) Safeco also argues that Plaintiff's policies are internally ambiguous as to whether they provide excess insurance and, even if they did provide as much, the excess clause in the Safeco policy cancels out comparable provisions in Plaintiff's policies. (*Id.* at 12–

offered evidence establishing that MOE and Country somehow breached their duty to defend Mr. Slater in the underlying litigation, such that he would have a right to reimbursement from them that Plaintiff may pursue via a claim for equitable subrogation. (*See* Dkt. No. 35 at 18–21.) To the extent that equitable principles entitle Plaintiff to compensation from MOE and Country for costs incurred defending Mr. Slater in the underlying litigation, such amounts are more properly sought via equitable contribution. Therefore, MOE's motion for partial summary judgment and Country's joinder and motion for partial summary judgment are GRANTED on this ground.

Similarly, to assert a claim of equitable subrogation against Safeco, Plaintiff must establish that Ms. Lott, Safeco and Plaintiff's shared insured, has a right to reimbursement as to Safeco. *See Trinity Universal Ins. Co.*, 312 P.3d at 984. Plaintiff provided a defense to Ms. Lott in the underlying litigation pursuant to Plaintiff's policies, as Ms. Lott was a member of the LISECC board named as a defendant. *See Ortego*, Case No. C14-1840-RSL, Dkt. Nos. 1, 13; (Dkt. Nos. 38 at 2, 38-1 at 2). In April 2015, Ms. Lott tendered the defense of the underlying litigation to Safeco, which Safeco accepted subject to a reservation of rights. (*See* Dkt. Nos. 29-3 at 2, 5–6; 29-4 at 2–8.) But Safeco did not participate in the underlying litigation following Ms. Lott's tendering of the defense to it. Rather, Safeco contacted LISECC and the Summit Law Group "to obtain the status of the case and determine what percentage of [counsel's] bill Safeco would owe for Ms. Lott." (Dkt. No. 32 at 2.) To date, Safeco has not incurred any costs in defending Ms. Lott in the underlying litigation despite her tendering of the defense to it. (*See* Dkt. No. 28 at 8–10, 12–13.) Thus, a genuine dispute exists as to whether Ms. Lott has a right to reimbursement sufficient to support Plaintiff's claim of equitable subrogation against Safeco. *See Celotex*, 477 U.S. at 323; *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874; *Trinity Universal Ins. Co.*,

---

16.) Safeco did not move for summary judgment on these issues, (*see generally* Dkt. No. 28), and its arguments raise factual issues as to the parties' intent, the proper interpretation of Plaintiff's policies, and the relationship between Plaintiff's policies and the Safeco policy that preclude granting summary judgment on this issue at this stage of the litigation. Moreover, as discussed further below, Plaintiff's ability to bring an equitable subrogation claim against Safeco is not entirely dependent on Plaintiff's purported status as Ms. Lott's excess insurer.

312 P.3d at 984; *Mahler*, 957 P.2d at 640. Therefore, Safeco's motion for partial summary judgment is DENIED on this ground.[11]

Safeco also asserts that Plaintiff's subrogation claim fails as a matter of law because its insured, LISECC, is obligated to indemnify its directors who are sued in their capacity as directors and are wholly successful in the lawsuit. (Dkt. No. 28 at 18–19) (citing *Ortego*, Case No. C14-1840-RSL, Dkt. No. 1; Wash. Rev. Code § 23B.08.520); (*see also* Dkt. No. 29-7 at 10.)[12] Safeco argues that "LISECC cannot seek defense costs or indemnification, because it is required to reimburse Ms. Lott for the same under" Wash. Rev. Code § 23B.08.520. (Dkt. No. 28 at 18–19.) But as discussed above, the analysis of whether Plaintiff may bring an equitable subrogation claim against Safeco focuses on whether a right to reimbursement accrued to Ms. Lott, the insured shared by Safeco and Plaintiff, not LISECC. *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874; *Trinity Universal Ins. Co.*, 312 P.3d at 984. Safeco has not asserted that LISECC's

---

[11] In its motion for partial summary judgment, Safeco contends that Plaintiff cannot bring a subrogation claim against Safeco because LISECC did not have rights or remedies against Ms. Lott or Safeco. (Dkt. No. 28 at 16–19.) But the Court looks to whether Ms. Lott, the insured shared by Plaintiff and Safeco, has a claim against Safeco sufficient to support Plaintiff's claim for equitable subrogation, not any claim LISECC may have against Ms. Lott. *See Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874; *Trinity Universal Ins. Co.*, 312 P.3d at 984; *Mahler*, 957 P.2d at 640.

Safeco also argues that the doctrine of claim preclusion bars Plaintiff's equitable subrogation claim, as LISECC did not bring a cross-claim against Ms. Lott or a third-party complaint against Safeco in the underlying litigation. (*See* Dkt. No. 28 at 17) (citing *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009)). Safeco has not cited, and the Court has not found, Washington law requiring an insured or insurer to bring a cross-claim or third-party complaint against an insurer to preserve a later claim for equitable subrogation. (*See id.*) Moreover, Safeco has not provided substantive argument demonstrating that the elements of claim preclusion are satisfied in the present case. (*See id.*) The Court declines to conclude that Plaintiff's claim for equitable subrogation against Safeco is barred by the doctrine of claim preclusion.

[12] As the Court has already found that Plaintiff has not established a genuine dispute as to whether Mr. Slater has a claim against MOE and Country sufficient to support Plaintiff's claim for equitable subrogation, it need not reach MOE and Country's arguments regarding the preclusive effect of LISECC's bylaws and Wash. Rev. Code § 23B.08.520 on Plaintiff's equitable subrogation claims against them.

ORDER
C18-1591-JCC
PAGE - 14

bylaws or Washington law preclude any claim that Ms. Lott may have against Safeco for failing to defend her after she tendered the defense of the underlying litigation to it. (*See* Dkt. No. 28 at 18–19; *see generally* Dkt. No. 40.) Therefore, Safeco's motion for partial summary judgment is DENIED on this ground.

## III. CONCLUSION

For the foregoing reasons, MOE's motion for partial summary judgment (Dkt. No. 21), Country's joinder and motion for partial summary judgment (Dkt. No. 24), and Safeco's motion for partial summary judgment (Dkt. No. 28) are GRANTED on: (1) Plaintiff's claims for equitable contribution for costs attributable to defending LISECC or members of the LISECC board in the underlying litigation who were not insureds of MOE, Country, or Safeco; and (2) Plaintiff's claims for equitable subrogation against MOE and Country. The motions are otherwise DENIED.

DATED this 16th day of July 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE